UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID WHITE                                                                 CIVIL ACTION

VERSUS                                                                      NO. 05-4041

JO ANNE B. BARNHART,                                                        SECTION "R" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

**FINDINGS AND RECOMMENDATION**

Plaintiff, David White, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 405(g), 423. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Despite being ordered to file a memorandum of facts and law, Record Doc. No. 9, plaintiff filed a timely motion for summary judgment/remand.[1]  Record Doc. No. 12. Defendant filed a timely reply memorandum.  Record Doc. No. 17.

I.      PROCEDURAL HISTORY

White filed an application for DIB on October 3, 2003, alleging disability since April 30, 2003, based on a back condition.  (Tr. 27).  After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 16, 2004.  On April 8, 2005, the ALJ denied plaintiff's application.  (Tr. 13-18). After the Appeals Council denied review on June 24, 2005 (Tr. 3-5), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.     STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.      The ALJ erred in failing to find that plaintiff's impairments meet or equal the criteria of Listing 1.04.

B.      The ALJ erred in relying on vocational expert testimony that was not consistent with plaintiff's abilities.

---

[1] Plaintiff is advised that, pursuant to a directive from the Judicial Conference of the United States and an order of the Chief Judge of this court, all parties must refrain from putting dates of birth and social security numbers in public records.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1. Plaintiff's degenerative disc disease is a severe impairment.

2. White's impairment or combination of impairments does not meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4, including but not limited to Section 1.04.

3. His allegations regarding pain, functional limitations and the complete inability to work are not substantiated by record evidence and are not fully credible.

4. White has the residual functional capacity to lift 50 pounds occasionally and 10 to 20 pounds frequently; with the need to avoid repetitive bending; with standing or walking six hours in an eight-hour work day; with sitting six hours in an eight-hour work day; with occasional climbing of ramps and stairs; with no repetitive twisting; and with no work at heights or with dangerous machinery.

5. Plaintiff's impairments and residual functional capacity preclude his past relevant work as a skilled welder performed at the medium exertion level because of his postural and environmental limitations.

6. Considering White's impairments, residual functional capacity, age, education and work experience, and the vocational expert's testimony, there are a significant number of jobs in the national economy that plaintiff is capable of performing, such as semi-skilled and unskilled welding, soldering and brazing, and production workers/assemblers.

(Tr. 17).

IV.     ANALYSIS

    A.     Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether

substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2004). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2] The five-step

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

---

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

B.    Factual Background

Plaintiff testified that he was 50 years old, had worked as a pipe welder since the 1980s and had undergone back surgery in July 2003. (Tr. 211-12). He said he had a ninth grade education. He stated that he was laid off twice by his last employer, once before his accident and a second time in May 2003. (Tr. 212-14). He said he has not worked since then and that his wife supports them both with her job. (Tr. 214).

White testified that he had worked as a lead man for a while, which involved some additional written reporting of the job that he and his crew of three welders had done. He said the lead man was responsible for the quality of the work. (Tr. 215-16).

Plaintiff stated that he worked ten-hour days when his job was busy and eight-hour days when it was slow. He recalled that he had lifted objects weighing 30 to 50 pounds while working as a welder. He testified that he attended vocational technical school from 1983 to 1985 to learn different trades after leaving high school. (Tr. 216-17).

Plaintiff stated that he lives with his wife. He said he normally gets out of bed at 8:00 a.m. on week days and does household chores, such as making beds, hand-washing the dishes, vacuuming and doing laundry, while his wife is at work. He said his wife usually does the grocery shopping and he does most of the cooking at all three meals, unless she picks up something for dinner on her way home from work. (Tr. 217-19).

White testified that he mows his two lots with a riding lawnmower, which takes about an hour, and uses a gas-powered weed eater that weighs 20 or 25 pounds.  (Tr. 219).

White said he watches television for six to seven hours a day and reads the newspaper.  He stated that he has a checking account and that both he and his wife pay the bills.  He said he continues to drive.  He testified that he drives on weekends to see his children, who live five or six blocks away, and that he usually visits with them for two or three hours.  He said he occasionally babysits for his eight-year old and six-year old grandchildren.  (Tr. 221).

Plaintiff testified that he used to go fishing and hunting when he had a boat.  He said he was towing the boat when he was rear-ended in October 2002, which totaled both his truck and his boat.  He said he was not hospitalized but he began feeling pain in his lower back later in the day.  (Tr. 222).  He stated that he now fishes from the bank on weekends and that his fishing gear weighs less than 10 or 15 pounds.

White testified that he can lift 20 to 25 pounds frequently.  He stated that he gets spasms in his back if he walks for more than 10 or 15 minutes, or maybe up to 30 minutes.  He said he has to sit and rest for 15 to 20 minutes until the pain goes away, and then he can walk for another 15 minutes.  (Tr. 223-24).  He testified that he was having back spasms during the hearing and asked if he could stand up.  He said he can stand for 15 to 20 minutes before he needs to sit.  He stated that he can sit for 30 to 45 minutes.

Plaintiff said that his doctor, Dr. Vogel, prescribes Soma and Darvocet and a type of salve to put on his muscle spasms in his back. (Tr. 224). He stated that Dr. Vogel told him not to lift more than 50 pounds and not to twist or bend over for a long time. He said Dr. Vogel told him to walk one-half mile until he started to hurt, and then take a break. White stated that Dr. Vogel told him to sit on hard-back chairs to keep his back straight and advised him to lose some weight. (Tr. 225-26).

White said he attended physical therapy for six weeks in the beginning of 2004, which consisted mostly of stretching exercises for his legs and back and using a heating pad. He testified that he takes care of his own personal hygiene. He stated that Dr. Dale was a chiropractor who treated him initially. (Tr. 226). He testified that he still uses a heating pad when his back bothers him a lot.

Plaintiff stated that he takes Ziac for high blood pressure, Darvocet for pain, Soma for muscle spasms and a medication that was recently prescribed for high blood sugar. He said he had recently seen blood in his urine and had been diagnosed with bleeding in his kidney and high blood sugar. He stated that he had undergone a biopsy of his kidneys but would not have the results until November 2004. (Tr. 227-28).

White said that, before his surgery, the pain was like a knife in his back and that the surgery took away some of the pain, but he still has a knot and muscle spasms in his back. (Tr. 229). He stated that he has some pain while he cuts the grass and uses the

weed eater and that afterwards he has to rest for the remainder of the afternoon with a heating pad. (Tr. 229-30). He said he does not have to lie down during the day to relieve his pain and that he mostly sits and uses a heating pad.

Plaintiff testified that, if his pain went away, he would return to his work as a welder, which he liked and which supported his family. (Tr. 230). He said that, when he was a lead welder, he still did his own job and made sure that the other welders did their jobs. He stated that he did not follow blueprints or order supplies. (Tr. 232).

White stated that Dr. Vogel has not told him when he will be released from the doctor's care. (Tr. 232-33). He said Dr. Vogel just told him not to do too much bending over or stooping down and picking things up. He testified that he has called Dr. Vogel a couple of times when he has had a muscle spasm and the doctor told him to come in if it gets any worse. (Tr. 233). He said he has only seen Dr. Vogel once since his surgery, a couple of months before the hearing. Plaintiff stated that Dr. Vogel told him he was having bad knots in his back and should not twist or bend over and pick up anything until he returned to see the doctor 30 days later. He said Dr. Vogel gave him some salve for his back at that last appointment in September 2004 and he has not seen Dr. Vogel since then. (Tr. 234-35).

### C.     Vocational Expert Testimony

A vocational expert, Crystal Younger, testified that plaintiff's prior work as a welder/fitter was skilled duty performed at a medium exertional level. (Tr. 232).

The ALJ proposed a hypothetical of a claimant who has the residual functional capacity to work on a sustained basis and who could lift and carry up to 50 pounds occasionally, between 10 and 25 pounds frequently and 10 pounds constantly. The claimant would need to avoid repetitive bending and concentrated exposure to heights and dangerous machinery, should only occasionally climb ramps, stairs, ladders, ropes or scaffolds, could walk or stand for up to six hours in an eight-hour day and could sit for up to six hours in an eight-hour day. (Tr. 235).

The vocational expert testified that such a claimant could not perform White's past relevant work but that jobs exist in the region or nationally that such a claimant could perform. (Tr. 236-37). Younger stated that there are significant numbers of sedentary and light semiskilled and light unskilled welder's jobs available both locally and nationally. (Tr. 237-38). She stated that all of these jobs are listed under census code 814 in the Dictionary of Occupational Titles ("DOT") and are defined as welding, soldering and brazing jobs.

Younger testified that the hypothetical claimant could also perform jobs under census code 896, which is other production workers, including assemblers. She stated that

11

there are significant sedentary and light semiskilled and unskilled jobs in this category locally and in the national economy. (Tr. 238-40).

The vocational expert testified that she would reduce the numbers of light duty jobs by 25 percent to account for the standing limitation of 6 hours per day. She stated that her testimony was consistent with the DOT. (Tr. 240).

Younger stated that her prior testimony would not change if the ALJ added an additional restriction of avoiding repetitive twisting. (Tr. 241-42).

    D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 14-15). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

    E.    Plaintiff's Appeal

        1.    *The ALJ did not err in finding that plaintiff's impairments do not meet or equal the criteria of Listing 1.04.*

The ALJ found at the second and third steps of the sequential evaluation that White's degenerative disc disease is a severe impairment, which does not meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4,

including but not limited to Listing 1.04.  Plaintiff argues that the ALJ erred by finding that he does not meet Listing 1.04.

White appears to argue that he meets Listing 1.04(A), which provides that a claimant is disabled if he has:

> 1.04   Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss <u>and</u>, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . . .

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A) (emphasis added).

In his memorandum, White merely lists his diagnoses.  He does not explain how his impairments meet the criteria of Listing 1.04.  He does not quote or paraphrase any portion of the Listing, much less analyze how his impairments meet the multiple, specific requirements of Listing 1.04(A).

The mere diagnosis of a listed impairment is insufficient, in itself, to sustain a finding of disability. 20 C.F.R. § 416.925(d); <u>Harris v. Barnhart</u>, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003) (unpubl. opin.); <u>Estok v. Apfel</u>, 152 F.3d 636, 640 (7th Cir. 1998); <u>Arroyo v. Secretary of Health & Human Servs.</u>, 932 F.2d 82, 87-88 (1st Cir.

1991); Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983); Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995). Plaintiff must show that he was "so functionally impaired" by his impairment "that [he] was precluded from engaging in any substantial gainful activity." Hames, 707 F.2d at 165; accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

> For a claimant to show that his impairment matches a listing, it must meet <u>all</u> of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. See Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983) ("An impairment 'meets' a listed condition . . . only when it manifests the specific findings described in the set of medical criteria for that listed impairment." "The level of severity in any particular listing section is depicted by the <u>given set</u> of findings and not by the degree of severity of any single medical finding--no matter to what extent that finding may exceed the listed value"). <u>Id.</u>, at 91. (Emphasis in original.)

Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990) (footnotes omitted) (emphasis in original); accord Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990).

In the instant case, White has not met his burden to demonstrate that he meets all of the medical criteria of Listing 1.04(A). Although MRI tests had revealed degenerative disc disease and evidence of nerve root compression in White's lumbar spine, none of plaintiff's treating physicians found any motor loss, muscle atrophy, sensory loss or reflex loss throughout almost two years of treatment records.

Plaintiff's treating neurosurgeon, Kenneth Vogel, M.D., found no such losses when he examined plaintiff on April 28, 2003. (Tr. 118).  Following plaintiff's back surgery in July 2003, Dr. Vogel found that White had only mild pain and mild limitations of motion in his lumbar spine.  Dr. Vogel made no mention of any motor loss, atrophy, sensory loss or reflex loss during follow-up visits on September 29 (Tr. 120) and November 10, 2003. (Tr. 121).

At plaintiff's last visit on November 10, 2003, Dr. Vogel assessed a 10 to 15% medical impairment of the body as a whole and opined that plaintiff would reach maximum medical improvement within one year of the surgery.  The only restrictions he mentioned were that White should avoid lifting, pushing or pulling more than 50 pounds and bending repeatedly.  He released plaintiff from his care to return on an as needed basis. (Tr. 121).

Accordingly, the ALJ did not err by failing to find that White meets Listing 1.04.

> 2.   *The ALJ did not err by relying on vocational expert testimony that was inconsistent with plaintiff's abilities.*

The ALJ found that plaintiff has the residual functional capacity to lift 50 pounds occasionally and 10 to 20 pounds frequently; with the need to avoid repetitive bending; with standing or walking six hours in an eight-hour work day; with sitting six hours in an eight-hour work day; with occasional climbing of ramps and stairs; with no repetitive

15

twisting; and with no work at heights or with dangerous machinery. At the fifth step of the sequential evaluation, the ALJ found there are a significant number of jobs in the national economy that White is capable of performing, such as semi-skilled and unskilled welding, soldering and brazing, and production workers/assemblers.

Plaintiff argues that the ALJ erred in relying on the vocational expert's testimony because the vocational expert testified that he could not return to his past relevant work as a medium-duty welder, based on the six-hour standing limitation that the ALJ found in plaintiff's residual functional capacity. However, the ALJ's hypothetical and the vocational expert's testimony took into account the standing limitation. Specifically, the vocational expert found that a claimant with White's limitations could perform sedentary and light duty jobs, not medium duty. She reduced the available number of light duty jobs by 25 percent to account for the standing limitation.

"Sedentary work" involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers and small tools, sitting for about six hours out of an eight-hour work day and occasionally walking or standing. 20 C.F.R. § 404.1567(a); Ripley v. Chater, 67 F.3d 552, 556 (5th Cir. 1995).

"Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job is also in this category if it involves very little lifting but requires "a good deal of walking or standing, or when it

involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(a).

The limitations in plaintiff's residual functional capacity were supported by Dr. Vogel's medical assessments, as previously described herein. The ALJ found plaintiff's allegations concerning his pain and functional impairments not fully credible.

The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court. Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Villa, 895 F.2d at 1024. The ALJ found that plaintiff's assertions were not corroborated by the medical evidence and my review of the medical record indicates that this finding is supported by substantial evidence. The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required. Falco, 27 F.3d at 163-64; Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.); accord James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 164).

Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff could perform sedentary and light duty, semi-skilled and unskilled jobs in welding, soldering and brazing, and as a sedentary and light duty, production worker/assembler, and that such jobs are available in significant numbers in the local and national economies.

## CONCLUSION

The ALJ did not err by failing to find that plaintiff meets Listing 1.04 or by relying on the vocational expert's testimony. Substantial evidence in the record supports the ALJ's findings.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this   5th   day of June, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE